Appeal No. 22-10348-J

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

**Mark Henderson,**
**as Administrator of the Estate of Christopher Henderson, deceased,**
Appellant/Cross-Appellee/Plaintiff

v.

**Ford Motor Company**
Appellee/Cross-Appellant/Defendant

_____

On Appeal from the United States District Court
for the Northern District of Alabama, Northeastern Division
Case No. 5:18-cv-00368-LCB

_____

## APPELLANT'S BRIEF

_____

Thomas P. Willingham
Mary Leah Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Overlook II
2839 Paces Ferry Road SE, Suite 400
Atlanta, GA  30339
Phone: (404) 751-1162
Facsimile: (855) 674-1818
E-mail: tom.willingham@beasleyallen.com
          maryleah.miller@beasleyallen.com

Benjamin E. Baker, Jr.
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36103-4160
Phone: (334) 269-2343
Facsimile: (334) 954-7555
Email: ben.baker@beasleyallen.com

*Attorneys for Appellant/Cross-Appellee/Plaintiff Mark Henderson, as*
*Administrator of the Estate of Christopher Henderson, deceased*

*Henderson v. Ford Motor Company*
No. 22-10348-J

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 – 26.1-3, Appellant Mark Henderson, as Administrator of the Estate of Christopher Henderson, deceased, by and through counsel of record, states that he is an individual and not a corporation. The following persons or entities have an interest in the outcome of this appeal:

Baker, Benjamin E., Jr., Counsel for Appellant

Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Counsel for Appellant

Burke, Liles C., United States District Court Judge

Caine Goldsmith, Co-counsel for Appellant

Doss, Jeffrey P., Counsel for Appellee

Eagan, Melody, Counsel for Appellee

Ford Motor Company (F), Appellee

Goldsmith, Robert V., III, Co-counsel for Appellant

Henderson, Mark, Appellant

Hoyt, Maya, Counsel for Appellee

Huie, Fernambucq & Stewart, LLP, Counsel for Appellee

Lightfoot, Franklin & White, LLC, Counsel for Appellee

McCoy, Elizabeth Davis, Counsel for Appellee

*Henderson v. Ford Motor Company*
No. 22-10348-J

Miller, Mary Leah, Counsel for Appellant

Schuck, Gregory L., Counsel for Appellee

Willingham, Thomas P., Counsel for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Mark Henderson ("Henderson") requests oral argument. Henderson believes oral argument will assist the Court in addressing the issues raised and provide additional information and context for the errors committed by the district court.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
    CORPORATE DISCLOSURE STATEMENT..................................C-1 of 2

STATEMENT REGARDING ORAL ARGUMENT........................................ i

TABLE OF CONTENTS...................................................................... ii

TABLE OF CITATIONS................................................................... iv

JURISDICTIONAL STATEMENT ................................................... vii

STATEMENT OF THE ISSUES ...................................................... 1

STATEMENT OF THE CASE........................................................... 1

    A. Nature of the Case ............................................................... 1

    B. Course of Proceedings and Dispositions Below....................... 2

    C. Statement of the Facts ........................................................ 7

        1. The Incident........................................................... 7

        2. Vehicle and Seat Belt System ............................... 8

    D. Standard of Review .............................................................. 10

SUMMARY OF THE ARGUMENT ................................................. 10

ARGUMENT AND CITATIONS OF AUTHORITY ...................................... 12

    I.    Ford's Warranty Claims Were Improperly Excluded ....................... 12

        A. Rule 703............................................................... 17

    II.    Excluding Kathy Lawhon's Testimony Was an Abuse of Discretion
        .......................................................................... 19

1. Henderson's case-in chief ............................................................. 19

2. Rebuttal ........................................................................ 23

III.  Exclusion of Cross-Examination of Mr. Miller On Warranty Claims
..................................................................................... 24

IV.  Excluding Cross-Examination of Mr. Burnett On Warranty Claims
..................................................................................... 26

V.  Henderson is Entitled to Judgment as a Matter of Law .................... 27

VI.  Henderson is Entitled to a New Trial ................................................ 29

CONCLUSION ..................................................................... 30

CERTIFICATE OF COMPLIANCE .................................................. 32

CERTIFICATE OF SERVICE ........................................................ 33

## <u>TABLE OF CITATIONS</u>

## CASES

*Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*,
  615 F.3d 1352 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 28

*Baine v. General Motors Corp.,* 141 F.R.D. 328 (M.D. Ala. 1991) . . . . . . . . . . 14

*Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.,*
  389 F.3d 1339 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*C.A. Associates v. Dow Chem.*, 918 F.2d 1485 (10th Cir. 1990) . . . . . . . . . . . 13

*Chao v. Tyson Foods, Inc.*,
  No. 2:02-CV-1174-VEH, 2009 WL 10687849 (N.D. Ala. Jan. 17, 2009) . . . . . 20

*City of Tuscaloosa v. Harcos Chem., Inc.*, 158 F.3d 548 (11ᵗʰ Cir 1998) . . . . . . . 10

*Cote v. R.J. Reynolds Tobacco Co.*, 909 F.3d 1094 (11ᵗʰ Cir. 2018) . . . . . . . . . . . 10

*Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613 (5th Cir. 1977) . . . . . . . . . . 13

*General Motors Corp. v. Saint*, 646 So. 2d 564 (Ala. 1994) . . . . . . . . . . . . . . . . 28

*\*Hessen v. Jaguar Cars, Inc.,* 915 F.2d 641 (11ᵗʰ Cir. 1990) . .10, 12, 13, 14, 16, 17

*Howard v. Walgreen Co.*, 605 F.3d 1239 (11th Cir. 2010) . . . . . . . . . . . . . . . . . 10

*Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070 (5th Cir. 1986) . . . . 13, 14

*Jones & Laughlin Steel Corp. v. Matherne*,
  348 F.2d 394 (5th Cir. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Jones v. Otis Elevator*, 861 F.2d 655 (11ᵗʰ Cir. 1988) . . . . . . . . . . . . . . . 13, 14, 25

*Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549 (D.C. Cir. 1993) . . . . . . 14

*Kretzschmar v. Birmingham Nursing & Rehab. Ctr. E., LLC*,
  No. 2:14-CV-02207-JEO, 2017 WL 2212705 (N.D. Ala. May 19, 2017) . . . . . 21

*McGinnis v. Am. Home Mortg. Servicing, Inc.*,
  817 F.3d 1241 (11th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 27

*Moulton v. The Rival Company*, 116 F.3d 22 (1st Cir. 1997) . . . . . . . . . . . . . . . 13

*Pineda v. Ford Motor Co.*, 520 F. 3d 237 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . 18

*Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334 (5th Cir. 1980) . . . . . . . . . . 13

*Ray v. Ford Motor Co.*,
  No. 3:07-cv-175-WHA-TFM, 2011 WL 6749034 (M.D. Ala. 2011) . . . . . . . . .13

*Rimer v. Rockwell Intern. Corp.*, 641 F.2d 450 (6th Cir. 1981) . . . . . . . . . . 13

*Shackelford v. Publix Super Markets, Inc.*,
  No. 7:12-CV-03581-MHH, 2014 WL 5148461 (N.D. Ala. Oct. 14, 2014)
  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22

*Shields v. Sturm, Ruger & Co.*, 864 F.2d 379 (5th Cir. 1989) . . . . . . . . . . . 14

*Smith v. Ingersoll-Rand Co.*, 214 F. 3d 1235 (10th Cir. 2000) . . . . . . . . . . . . . . 14

*United States v. Delk*, 586 F.2d 513 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . 23

*United States v. Garcia*, 447 F. 3d 1327 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . 18

*United States v. Gardner*, 887 F.3d 780 (6th Cir. 2018) . . . . . . . . . . . . . . . . . . . 23

*U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275 (11th Cir. 2001) . . . . . . . . . . . . . . 28

*Weeks v. Remington Arms Co., Inc.*, 733 F.2d 1485 (11th Cir. 1984) . . . . . . 13

*Wheeler v. John Deere Co.*, 862 F.2d 1404 (10th Cir. 1988) . . . . . . . . . . 13, 14

*Worsham v. A.H. Robins Co*, 734 F.2d 676 (11th Cir. 1984) . . . . . . . . . . . . 14

**STATUTES**

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

28 U.S.C. §1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

**RULES**

Fed. R. Civ. P. Rule 26(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fed. R. Civ. P. Rule 26(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Fed. R. Civ. P. 37(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fed. R. Civ. P. Rule 50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Fed. R. Evid. 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Evid. R. 703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17, 18

**OTHER**

APJI 32.13 – AEMLD / Defense – Contributory Negligence . . . . . . . . . . . . . . . . 28

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction pursuant to 28 U.S.C. §1332 because (1) the parties are citizens of different states (Henderson is a citizen of Alabama, Ford Motor Company ("Ford") is a citizen of Delaware) and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and cost. This Court has appellate jurisdiction over the district court's final judgment, which disposed all parties' claims, pursuant to 28 U.S.C. §1291. The district court entered a final judgment on August 25, 2021 (Doc. 101) based on the jury's verdict of August 3, 2021 (Doc. 99) in favor of Ford. Henderson filed post-trial motions. (Docs. 104, 105) The Notice of Appeal (Doc. 127) was filed on February 1, 2022, within thirty (30) days after the district court's January 3, 2022 Order denying Henderson's post-trial Motion for New Trial and Renewed Motion for Judgment as a Matter of law. (Doc. 126)

## STATEMENT OF THE ISSUES

1. Whether the district court abused its discretion excluding the other incident evidence of Ford's warranty claims at the trial of this case?

2. Whether the district court abused its discretion excluding the testimony of witness Kathy Lawhon in Henderson's case-in-chief?

4. Whether the district court abused its discretion excluding the testimony of witness Kathy Lawhon as rebuttal testimony?

5. Whether the district court abused its discretion in precluding cross-examination of defense expert Gregory Miller on warranty claims?

6. Whether the district court abused its discretion in precluding cross-examination of defense expert and corporate representative Roger Burnett on warranty claims?

7. Whether Henderson is entitled to judgment as a matter of law on Ford's affirmative defense of contributory negligence in the use of the seat belt?

8. Whether Henderson is entitled to a new trial and the district court abused its discretion denying Henderson's motion for a new trial?

## STATEMENT OF THE CASE

**A.    Nature of the Case**

Henderson asserted wrongful death, product liability claims pursuant to

the Alabama Extended Manufacturer's Liability Doctrine (AEMLD) against Ford for the defective design of the driver's seat belt system in the 2003 Mustang. (Doc. 55 at 4-6)[1] Specifically, the driver's seat belt system of the subject 2003 Mustang allowed for excess webbing in the seat belt system resulting in slack in the system and increased the risk of partial ejection in a foreseeable rollover crash. (*Id*. at 5) Henderson alleged that the defective design of the driver's seat belt system proximately caused the death of Christopher Henderson ("Chris") as he was partially ejected during this quarter roll crash and suffered fatal head injuries. (*Id.* at 3, 5)

## B.    Course of Proceedings and Dispositions Below

Henderson filed this action against Ford on March 8, 2018, asserting product liability claims for the wrongful death of his son, Christopher Henderson, as the administrator of his estate. (Doc. 1) Ford answered the Complaint on April 2, 2018. (Doc. 8)

Following the close of discovery, Ford moved for summary judgment on Henderson's claims. (Docs. 24-25) Henderson responded in opposition to the motion. (Doc. 35) Ford also filed a motion to exclude the expert opinions of

---

[1] Record citations are to the document number and page number appearing in the header generated by the district court's electronic filing system. Trial transcripts are Docs. 106, 107, 118, 119, 110, 111 and 112. Pretrial motions hearing transcript is Doc. 137. Transcripts are cited to by the document number and page number appearing in the header generated by the district court's electronic filing system.

Henderson's safety design expert, Steven Meyer, and Henderson opposed this motion. (Docs. 26, 34) The district court held a hearing on these motions on October 29, 2020. (Doc. 44)

Ford's motion to exclude the opinions of Mr. Meyer was denied. (Doc. 45 at 2, 21) Ford's motion for summary judgment was granted in part and denied in part. (*Id.*) The motion was denied as to Henderson's design defect and negligence claims for the driver's seat belt system. (*Id.* at 20-21) The motion was granted as to wantonness and to those claims Henderson had abandoned. (*Id.*, *see* Doc. 35 at fns. 7, 8)

On June 1, 2021, a joint pretrial order was entered. (Doc. 55) Henderson set out his claim for design defect pursuant to the AEMLD asserting that the driver's seat belt system of the 2003 Mustang is defective and unreasonably dangerous as its design allows for excess webbing to remain in the seat belt and increases the likelihood of an occupant being partially ejected in a rollover crash. (Doc. 55 at 4-6) Ford set out its defenses. (*Id.* at 6-8)

In advance of trial, motions *in limine* were filed, including Ford's motion *in limine* to exclude other incident evidence, to which Henderson responded. (Docs. 61, 81) Ford also filed a motion to strike witness Kathy Lawhon from Henderson's witness list as untimely disclosed, which Henderson opposed. (Docs. 71, 74) A hearing on these motions was held on July 23, 2021. (Doc.

87, Doc. 129 at 9, Doc. 137 at 1). An order was entered on July 25, 2021. (Doc. 90) The district court reserved ruling on several matters, including other similar incident evidence and the motion to strike. (*Id*. at 3)

This case proceeded to trial on July 26, 2021. (Doc. 55 at 8) Henderson only asserted a design defect claim pursuant to the AEMLD with respect to the driver's seat belt system at trial. (Doc. 55 at 4-6) Specifically, Henderson asserted that the extra webbing found in the subject driver's seat belt system following the crash was due to the retractor's inability to retract the belt webbing meaning the retractor spring failed to self-adjust or pull the webbing in and remove the slack to keep the belt tight; thus, the subject seat belt system had a slow retractor or retraction issue. (Doc. 118 at 39-40, 60) The defective condition is associated with routing friction of the seat belt system from the design placement and routing of the seatbelt, which prevented the retractor from being able to pull in the webbing. (*Id.* at 39-40) Additionally, the spring force of the retractor is not strong enough to overcome the friction, as such the retraction issue is a combination of the "spring not being strong enough" to pull in the webbing "and/or too much friction." (*Id.* at 40) Henderson contended that the failure of the retractor is not just an issue when the belt is retracting to stowage, but also when the belt is being worn to keep the belt snug on the body as one drives or reaches for something in the vehicle as the retractor spring that is responsible stowing the belt

4

is also responsible for keeping the belt tight when worn. (*Id.* at 50, 55-60) The additional webbing contributed to Chris's partial ejection as it allowed for more occupant excursion than it would have if the belt had been tight; thus, resulting in his fatal injuries. (*Id.* at 40, Doc. 119 at 139-140)

Ford asserted that retraction to stowage and retraction while the belt is being worn are two separate things. (Doc. 111 at 16, 114-116) Ford contended through a demonstration that the failure of a retractor to fully retract the belt to stowage does not result in the retractor failing to remain snug and track with an occupant while the seat belt is being worn. (*Id.* at 17-18, 30-31) Ford maintained whether Chris had excess webbing in his belt or belt fit snug, he'd still be partially ejected in this crash and receive fatal injuries. (*Id*. at 29, 60, 78, 104, Doc. 110 at 35-36)

Additional argument was heard on Ford's motion to strike and on precluding other incident evidence. (Doc. 107 at 51-62, 89-91, Doc.118 at 5-6, 24-31) The district court received testimony from Henderson's expert, Mr. Meyer, with respect to the other incident evidence of Ford's warranty claims involving seat belt retraction issues with the front outboard seat belts systems of the SN95 Mustang coupe vehicles, which includes the 2003 Mustang, and how the claims are substantially similar to the foregoing matter. (Doc. 118 at 6-25) The district court also received the testimony of Kathy Lawhon, an other similar incident witness. (Doc. 107 at 62-85) The district court ultimately

excluded other similar incident evidence at trial, that being Ford's warranty claims and the testimony of Kathy Lawhon. (Doc. 107 at 242, Doc. 118 at 30-31) The district court also excluded Kathy Lawhon's testimony determining the witness had been untimely disclosed. (Doc. 107 at 89-91) Henderson sought to use Ms. Lawhon's testimony as rebuttal evidence, which the district court denied. (Doc. 111 at 189-192, Doc. 94, Doc. 112 at 7-16)

During trial, evidentiary rulings precluded Henderson from cross-examining Ford's seat belt design expert, Gregory Miller and Ford's corporate representative and expert, Roger Burnett, about Ford's warranty claims. (Doc. 111 at 5, 36-37, 127-128) At the close of Henderson's and Ford's case, Ford moved for judgment as a matter of law, which was denied. (Docs. 91, 96 Doc. 119 at 168-84, Doc. 111 at 164, Doc. 112 at 16-17) At the close of Ford's case, Henderson moved for judgment as a matter of law on Ford's affirmative defenses. (Doc. 93, Doc. 111 at 131-164) The motion was denied as to contributory negligence in the use of the seat belt and granted as to the rest of the motion. (Doc. 111 at 157, 164)

The jury reached a verdict in favor of Ford on August 3, 2021. (Doc. 99) Final judgment was entered on August 25, 2021. (Doc. 101) On September 22, 2021, Henderson filed a Motion for New Trial and Renewed Motion for Judgment as Matter of Law. (Docs. 104, 105) These motions were denied on

January 3, 2022. (Doc. 126) Henderson timely filed his notice of appeal on February 1, 2022. (Doc. 126).

**C.    Statement of the Facts**

1.    <u>The Incident</u>

On April 20, 2016, the decedent, Chris Henderson, was driving a 2003 Ford Mustang, VIN 1FAFP40413F427968 ("subject vehicle") northbound on CR-312 in Lawrence County, Alabama. (Doc. 55 at 3) Chris was wearing the available driver's seat belt. (*Id*.) Following a left-hand turn in the roadway, the vehicle went out of control, yawing clockwise, and exiting the right-hand side of the road to a ditch. (*Id.,* Doc. 107 at 39-40, Doc. 110 at 105-106) The vehicle initially impacted the ditch embankment in a frontal impact, and then continued to move along the ditch with the left wheels of the vehicle impacting a driveway edge causing the vehicle to roll a quarter roll onto its driver's side coming to rest in the driveway. (*Id*., Doc. 107 at 46, Doc. 110 at 107) As the vehicle tripped to rollover at impact with the driveway edge it was traveling approximately nineteen (19) to twenty (20) mph. (Doc. 55 at 3) At the beginning of the crash sequence, there was at least fifteen (15) inches of excess webbing in Chris's seat belt. (*Id.*) Chris was partially ejected out of the driver's side window and received a fatal head injury when his head was crushed between the ground and the driver's side roof rail. (*Id*., Doc. 119 at 93, 111) There is a dent in the driver's side roof rail consistent with the fatal

injury. (*Id*., Docs. 122-228, 122-229) Chris would not have received serious to fatal injuries had he remained in the vehicle during the rollover crash. (Doc.119 at 130-131, Doc. 110 at 70)

2. Vehicle and Seat Belt System

The subject 2003 Mustang belongs to the SN95 platform which ran from model years 1994-2004. (Doc. 55 at 4) It was manufactured in May 2003. (Doc. 122-167) Ford was aware the Mustang could be involved in rollover crashes. (Doc. 55 at 4) The front seat belts of the SN95 Mustang are three-point belt systems consisting of an anchor near the floor, D-ring attached to the B-pillar and the latch plate which goes into the buckle, with the exception that they have an additional contact point of a belt guide loop attached to the seat near the head rest. (Doc. 122-681, Doc. 107 at 131-133, Doc. 111 at 24-25, Doc. 122-599) The B-pillar where the D-ring is mounted in the SN95 Mustang coupe is behind the front seat occupants so that belt guide loop assists the occupant in reaching the seat belt. (Doc. 107 at 133-134, Doc. 119 at 14-34) The main purpose of the belt guide loop was for comfort and convenience of the occupant. (Doc. 119 at 26, 38-39) The seat belt systems also contain a retractor which allows the belting webbing to be pulled out or spooled back in by the retractor spring. (Doc. 107 at 129, Doc. 122-681)

Ford designed the seat belt system to barely meet its internal standard for stowage retraction. (Doc. 27-10 at 28, Doc. 118 at 44-46, Doc. 119 at 30-31) This

resulted in vehicles meeting the requirement when manufactured, but a year later failing it. (Doc. 27-10 at 28, Doc. 118 at 46, Doc. 119 at 30-31) It can be inferred that the retractor spring force in the subject seat belt system was designed to be as weak as possible to barely comply with Ford's standards. Ford had documentation from its supplier in March 2003 showing that the front seat belt systems of the Mustang were having problems retracting and meeting Ford's internal standard. (Doc. 122-692, Doc. 118 at 49-50) The documentation showed that the addition of Teflon tape on the D-ring improved retraction speed. (*Id.,* Doc. 119 at 33) Ford had also received thousands of warranty claims reporting retraction issues with the front seat belts in the 2001-2004 SN95 Mustang as well as customer complaints. (Doc. 81 at 3-5, 8-9, Doc. 122-682, Doc. 122-683, Doc. 107 at 62-85, Doc. 118 at 5-11)

Technical Service Bulletins (TSB)[2] were issued by Ford to address the seat belt retraction issue of 2000-2004 Mustangs. (Docs. 690-691, Doc. 118 at 56) The TSB offered a solution of placing Teflon tape over the D-ring to make the seat belt retract faster by reducing the friction as the belt webbing pulls over the D-ring as it retracts. (Doc. 118 at 48, 56-58) The subject vehicle was manufactured without Teflon tape and never received the fix. (*Id.* at 57-58) Mustangs manufactured a month after Chris's had the Teflon tape at the time of manufacture. (*Id*., Doc. 691)

---

[2] A TSB addresses vehicle service issues in the field and provides information to dealerships on how to fix an issue. (Doc. 119 at 32)

**D.    Standard of Review**

When reviewing a district court's evidentiary ruling this Court applies an abuse of discretion standard.[3] In reviewing issues Nos. 1-6, *supra*, this Court will determine whether the district court abused its discretion.

This Court reviews *de novo* a district court's denial of a judgment as a matter of law.[4] In so doing, all evidence should be considered, and the inferences drawn therefrom, "in the light most favorable to the nonmoving party."[5] It should be determined if there is "any legally sufficient basis for a reasonable jury to find in favor of the nonmoving party."[6]

The denial of a motion for new trial by a district court is reviewed under an abuse of discretion standard by this Court.[7]

## SUMMARY OF THE ARGUMENT

The district court abused its discretion when it excluded Ford's warranty claims related to the 2001-2004 SN95 Mustang front seat belt retraction issues as other similar incident evidence, despite the fact Henderson established through his expert, Mr. Meyer, that the claims were substantially similar to the foregoing

---

[3] *Hessen v. Jaguar Cars, Inc.,* 915 F.2d 641, 643 (11th Cir. 1990); *City of Tuscaloosa v. Harcos Chem., Inc.*, 158 F.3d 548, 557 (11th Cir 1998).

[4] *Howard v. Walgreen Co.*, 605 F.3d 1239, 1242-43 (11th Cir. 2010).

[5] *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016)

[6] *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.,* 615 F.3d 1352, 1360 (11th Cir. 2010).

[7] *Cote v. R.J. Reynolds Tobacco Co.*, 909 F.3d 1094, 1104 (11th Cir. 2018).

defect and that Mr. Meyer relied upon them in formulating his opinions in this case. It also abused its discretion excluding the testimony of Kathy Lawhon, an other similar incident witness, who complained to Ford about retraction issues with her Mustang and whose seat belt would not retract while being worn as well as when being stowed. Even if precluded from calling her in Henderson's case-in-chief, Henderson should have been allowed to call her as a rebuttal witness, as her testimony directly rebutted and impeached that of Ford's expert, Mr. Miller, and its corporate representative, Mr. Burnett. Henderson was also denied the ability to cross-examine Mr. Miller and Mr. Burnett on the warranty claims even though the evidence rebutted their trial testimony.

The district court erred when it denied Henderson's motion for judgment as a matter of law, and his renewed motion, on Ford's defense of contributory negligence in the use of the seat belt. Ford failed to prove each element of its affirmative defense. The jury should not have been allowed to consider this defense. This court should enter judgment in favor of Henderson on this affirmative defense and grant him a new trial.

The district court abused its discretion when it denied Henderson's motion for a new trial. These cumulative errors are so prejudicial and affected Henderson's substantial rights that the judgment should be vacated, and Henderson granted a new trial to avoid substantial injustice.

11

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.    Ford's Warranty Claims Were Improperly Excluded

The district court abused its discretion when it excluded Ford's warranty claims related to seat belt retraction issues in 2001-2004 SN95 Mustang coupe vehicles. (Doc. 118 at 30-31) This ruling followed argument at the pretrial motions hearing, an offer of proof by Henderson's expert, Mr. Meyer, and additional argument on the same. (Doc. 137 at 52-63, Doc. 118 at 5-31, Doc.122-682, Doc. 122-683) Henderson proved that the warranty claims are substantially similar to this matter in accordance *Hessen v. Jaguar Cars, Inc.,* 915 F.2d 641, 643 (11th Cir. 1990). The warranty claims detailing other incidents of front seat belts in the SN95 Mustang failing to retract were admissible (1) as evidence of other similar incidents providing notice of defect to Ford and (2) information relied upon Mr. Meyer, in formulating his opinions in this case; thus, Mr. Meyer should have been able to discuss how this information was used as part of his analysis in conformity with Fed. R. Evid. R. 703. (Doc. 118 at 6)

Evidence of other incidents are "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, **knowledge**, identity, or absence of mistake or lack of accident . . ."[8] Other incident evidence is admissible in products liability cases when it is offered to prove: (1) the notice of a particular

---

[8] Fed. R. Evid. 404(b)(emphasis added).

defect; (2) the dangerousness of the defect; (3) the manufacturer's ability to correct the defect, (4) lack of safety for intended uses; (5) standard of care; (6) strength of the product; and/or (7) that the defect caused the accident or injury alleged.[9] Accordingly, "the occurrence of similar accidents or failures involving the same product holds great relevance, since evidence of such failures tends to make the existence of a defect more probable than it would be without the evidence."[10]

Before admission of the evidence, it must be shown that: (1) the prior failures occurred under conditions substantially similar to those existing during the occurrence in question and (2) the prior incidents must have not occurred too remote in time from the time of the incident in question.[11] It should be noted that "substantially similar" does not mean identical.[12] "Substantially similar" is predicated by the defect at issue.[13] Thus, only requiring 'substantial similarity'

---

[9] *Weeks v. Remington Arms Co., Inc.*, 733 F.2d 1485, 1491 (11th Cir. 1984); *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 338-339 (5th Cir. 1980); *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 617 (5th Cir. 1977); *Jones & Laughlin Steel Corp. v. Matherne*, 348 F.2d 394, 400 (5th Cir. 1965); *Hessen*, 915 F. 2d at 651.
[10] *C.A. Associates v. Dow Chem.*, 918 F.2d 1485, 1489 (10th Cir. 1990).
[11] *Weeks*, 733 F.2d at 1491.; *Jones v. Otis Elevator*, 861 F.2d 655, 662-663 (11th Cir. 1988); *see also Ray v. Ford Motor Co.*, No. 3:07-cv-175-WHA-TFM, 2011 WL 6749034 at *2 (M.D. Ala. 2011).
[12] *Rimer v. Rockwell Intern. Corp.*, 641 F.2d 450, 456 (6th Cir. 1981); *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1407-08 (10th Cir. 1988); *Moulton v. The Rival Company*, 116 F.3d 22, 27 (1st Cir. 1997).
[13] *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir. 1986).

among the variables relevant to plaintiff's theory of defect.[14] Any immaterial differences go to the weight of the evidence, not its admissibility.[15]

The theory on which a plaintiff seeks to introduce the other incident evidence determines the degree to which substantial similarity is required. When evidence offered to prove notice, the similarity requirement is less strict, and the lack of similarity of conditions will not cause exclusion provided the incident was one which should have warned the defendant.[16] Evidence of other incidents is admissible if the plaintiff establishes their substantial similarity in product type and usage contexts.[17] Henderson, through his design safety engineer, Mr. Meyer, proved, in accordance with the *Hessen* decision, that the thousands of warranty claims for 2001-2004 SN95 Mustang coupe exhibiting slow retraction issues were substantially similar to the slow retraction issue experienced by the subject 2003 Mustang's driver's seat belt system. The other incident information is admissible for the non-hearsay purpose of showing Ford's notice of the probability of a defective product and was wrongfully excluded from the trial of this case.[18]

---

[14] *Smith v. Ingersoll-Rand Co.,* 214 F. 3d 1235, 1248-49 (10th Cir. 2000).

[15] *Jones,* 348 F.2d at 400.; *Wheeler,* 862 F.2d at 1407-08.; *Jackson.,* 788 F.2d at 1083.; *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 381 (5th Cir. 1989).

[16] *Joy v. Bell Helicopter Textron, Inc.,* 999 F.2d 549, 555 (D.C. Cir. 1993); *Worsham v. A.H. Robins Co,* 734 F.2d 676, 688-89 (11th Cir. 1984).

[17] *Baine v. General Motors Corp.,* 141 F.R.D. 328, 329-30 (M.D. Ala. 1991).

[18] *See, e.g.*, *Worsham,* 734 F.2d at 687.; *Jones,* 861 F.2d at 662-663.

Mr. Meyer testified: (1) that as part of his analysis in this case he reviewed the warranty claims information produced by Ford, the warranty claims related to the 2001-2004 SN95 Mustang at issue in the case, (2) the seat belt systems in the 2001-2004 Mustang coupes contained in the warranty claims information are identical to the seat belt system in the subject Mustang, (3) this is the type of information experts in his field rely upon, (4) contained within the warranty claims document are customers complaining of retraction issues or slow retraction issues with their front seat belts in the 2001-2004 Mustang, (5) there were claims that occurred before the date of manufacture of the subject vehicle, (6) there were claims that occurred after the date of manufacture of the subject vehicle but before the crash, (7) Ford was responding to these warranty claims of slow retraction as reported by the customer, (8) Ford was replacing retractors, and (9) ultimately in response Ford issued a TSB. (Doc. 118 at 6-11, 24-25, Doc. 122-682, Doc.122-683) The TSB used Teflon tape as a remedy and was installed on the D-ring "to reduce friction on the surface and help with retraction" and Ford eventually began manufacturing the vehicles with the Teflon tape. (*Id.* at 9) In reviewing the warranty claims, there were customers complaining about the exact defect that existed in the Henderson Mustang. (*Id.*) Mr. Meyer utilized the warranty claims information in formulating his opinions with respect to the defect in the subject seat belt system. Specifically, he testified:

15

> The evidence in this case is clear and all parties agree that at the time of the crash sequence Mr. Henderson had additional webbing in his system, in his belt system. In other words, there was more webbing there than he needed and should have had, assuming that he was properly seated and driving the car. The retractor is the device that is intended and expected to pull that any loose -- looseness in the belt in; in other words, retract that extra webbing. So the retractor is performing a self-adjust feature when it works that way. And that is a function of the retractor. The retractor spring is affected by the amount of friction in that system, and that is what's relied upon to do just that. The ultimate conclusion here is that **Mr. Henderson's vehicle also was slow to retract**, and there's evidence to support that consistent with some of these claims. **That slow retraction issue is the exact defect issue that we're talking about here, and these claims repeatedly and consistently describe the front outboard seats in the subject vehicle, that is the SN95 Mustangs having a slow retractor or retraction problem that was leading to often times replacing the belts by Ford.**

(*Id*. at 10-11; *see also* 12, 18-19, 21-23)(emphasis added) Henderson proved through competent expert testimony that the warranty claims involved the **exact same** vehicle, the **exact same** seat belt restraints systems, the **exact same** retractor, the **exact same** design geometry, meaning they each are routed through a guide loop on the side of the front seat, and the **exact same** issues, retraction problems or slow to retract. This information is extremely relevant to showing Ford's knowledge that its customers were having problems with the front seat belts retracting; thus, leaving slack in the system, and the ability to correct the defect. (Doc. 118 at 27)

Henderson's offer of proof was consistent with the *Hessen* opinion, which involved allegations of defect with a 1980 Jaguar XJ6 which caught fire resulting

in extensive damage to the Hessen home on October 9, 1984.[19] It was alleged that the fire was caused by a defective fuel line system in the Hessen's vehicle.[20] Two types of other incidents were allowed into evidence (1) a recall for potential fuel leakage in the engine compartment of certain Jaguar vehicles, even though the Hessen vehicle was not subject to the recall and (2) owner complaints.[21] Hessen, like Henderson, offered expert testimony that the defect identified in the recall and customer complaints were the same as the Hessen vehicle.[22] This Court held the district court did not abuse its discretion in admitting such evidence.[23] Mr. Meyer's testimony followed that which was asked of the expert in *Hessen*.[24] He proved substantial similarity and the warranty claims should've been admitted.

A. Rule 703

Mr. Meyer reviewed and relied on the other incident information in formulating his opinions. In determining the cause of the excess webbing in the seat belt system, Mr. Meyer evaluated whether there was a failure of the crash sensor or a failure of the retractor spring to properly self-adjust. (Doc. 118 at 18) The other incident information provided by Ford assisted in this analysis and showed prior retraction problems with the Mustang seat belt system; thus,

---

[19] *Hessen,* 915 F.2d at 643.
[20] *Id.*
[21] *Id.* at 649.
[22] *Id.* at 649-650.
[23] *Id.*
[24] *Id.* at fn. 17.

eliminating other causes for the failure of the retractor to remove excess webbing in the system. (*Id.* at 18-19, 22-23, 28, 30) Experts can base their opinions on inadmissible data, if it's demonstrated that such data is reasonably relied upon by experts in their fields.[25] Mr. Meyer's other incident based opinions were admissible, even if the underlying warranty claims documents were not admitted at the trial of this case.[26] Preventing him from discussing the warranty claims and how he utilized them in reaching his opinions in this case was prejudicial to Henderson since he wasn't allowed to thoroughly present how Mr. Meyer reached his opinions and discuss information made the basis for his opinions.

During cross-examination of Mr. Meyer, he was questioned on TSBs of other manufacturers with slow retraction issues of their seat belts despite the fact they were not substantially similar to the subject vehicle, not the same retractor and were proffered in an effort to show that this happens to every belt, when the warranty claims produced by Ford showed a specific defect and specific issue, and yet, Henderson wasn't allowed to tell the jury about it. (*Id.* at 160-164) Henderson argued that Ford had opened the door to the warranty claims and his counsel should be allowed to redirect Mr. Meyer on them to show the magnitude

---

[25] Fed. R. Evid. 703.

[26] *Pineda v. Ford Motor Co.*, 520 F. 3d 237, 246 (3d Cir. 2008)(Rule 703 permits an expert to base his opinions on his consideration of a safety recall instruction even though evidence of those instructions would be inadmissible under Rule 407); *United States v. Garcia*, 447 F. 3d 1327, 1334-35 (11th Cir. 2006)

of the danger that existed and to show there was a specific problem, but the district court disagreed. (*Id.* at 160, 171) The exclusion of the warranty claims through the denial to admit the documents and by not allowing Mr. Meyer to discuss them, their relevance and support of his defect opinions in this case was substantially prejudicial to Henderson.

## II.    Excluding Kathy Lawhon's Testimony Was an Abuse of Discretion

### 1. Henderson's case-in-chief

Ford moved to strike witness Kathy Lawhon from Henderson's witness list, asserting that she was not timely disclosed, which Henderson opposed. (Docs. 71, 74) Initial arguments were heard on this matter during the pretrial motions hearing. (Doc. 137 at 73-78) Ms. Lawhon is an other similar incident witness who complained to Ford in 2014 about slow retraction issues with her Mustang driver's seat belt both in stowing and when wearing the belt and Ford made a report of it. (*Id.* at 75-76) It was during this initial hearing that Ford also raised that in addition to being untimely disclosed, Ms. Lawhon's testimony should also be excluded because Henderson cannot prove substantial similarity of her other incident. (*Id.* at 75, 77-78) The district court reserved ruling on the motion to hold an additional hearing. (Doc. 90 at 3). The district court heard Ms. Lawhon's testimony and received additional argument before excluding Ms. Lawhon's testimony. (Doc. 107 at 51-87, 89-91) The court expressed concerns regarding the substantial similarity

of the slow retraction issue with Ms. Lawhon's Mustang and the foregoing matter, but it seems the decision to exclude her testimony was based primarily on the timing of Henderson identifying her as a witness. (*Id.* at 89-91)

Ms. Lawhon was appropriately identified in accordance with the deadlines in the pretrial order when Henderson served his witness list on July 12, 2021. (Doc. 55 at 10, Doc. 67 at 3) Henderson also supplemented his discovery responses even though he was not required to do so since Ford has been aware of Ms. Lawhon's complaint for over eight years.[27] (Doc. 107 at 54, 69) Ms. Lawhon visited a Ford service center in 2013 after experiencing issues with her driver's seat belt initially retracting slowly to stowage and then eventually when the belt was worn it would not "snug up". (*Id.* at 65, 83, 70-71) Ms. Lawhon contacted Ford again January 2014 and a case was opened. (*Id.* at 54-57, 69) Ford maintained the full contact information for Ms. Lawhon and knew of her identify since she contacted Ford well-before the discovery cutoff in this case, prior to any document production in this matter, and even prior to Chris's death. (*Id.* at 57-59, Doc. 137 at 74, 76)

Even if Ms. Lawhon's disclosure was late (which it was not) a full analysis on the admissibility of her testimony would have resulted in admission of her testimony. Typically, a party cannot use information or a witness it failed to

---

[27]Fed. R. Civ. P. Rule 26(e); *see also Shackelford v. Publix Super Markets, Inc.*, No. 7:12-CV-03581-MHH, 2014 WL 5148461, at *5 (N.D. Ala. Oct. 14, 2014); *Chao v. Tyson Foods, Inc.*, No. 2:02-CV-1174-VEH, 2009 WL 10687849, at *1-2 (N.D. Ala. Jan. 17, 2009).

disclose pursuant to Rule 26 (a) or (e).[28] If the party shows that the failure was substantially justified or harmless, then the late-disclosed witness can testify.[29] In determining whether the late disclosure was substantially justified, courts consider the following factors: "(1) the importance of the testimony, (2) the reason for the failure to disclose the witness earlier, and (3) the prejudice to the opposing party if the witness had been allowed to testify."[30]

Ms. Lawhon's identity in this matter was first discovered by Henderson on July 7, 2021. (Doc. 107 at 52) Ford produced tens of thousands of warranty claims, customer contacts, and technical contacts concerning issues with the safety belt assemblies in 2001-2003 SN95 Ford Mustang, with the customer contact fields redacted (name, address, phone number, etc.). (*Id.* at 57-59, Doc. 137 at 74, 76) Henderson had asked for these documents to be produced without redaction, given they were produced subject to the non-sharing provision of the protective order entered in this case and marked confidential, yet Ford redacted them anyway; thus, preventing Henderson from easily discovering the true identities of these witnesses. In combing back through the thousands of pages of documents before trial, it was discovered that some pages had certain identifying information in the

---

[28] Fed. R. Civ. P. 37(c)(1).

[29] *See Shackelford*, No. 7:12-CV-03581-MHH, 2014 WL 5148461, at *5–7.

[30] *Kretzschmar v. Birmingham Nursing & Rehab. Ctr. E., LLC*, No. 2:14-CV-02207-JEO, 2017 WL 2212705, at *4 (N.D. Ala. May 19, 2017); *Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.,* 389 F.3d 1339, 1353 (11th Cir. 2004).

body of the recorded complaint. (*See* Doc. 74) It was during this process that Ms. Lawhon was identified on July 7, 2021. (Doc. 107 at 52-55, Doc. 137 at 73-74, 76) Ford knew Ms. Lawhon was a potential other incident witness at the time it produced discovery in this case. Ford's decision to produce the documents in a redacted form led to Ms. Lawhon's name being discovered weeks before trial. As reasoned in *Shackelford*, Ford's "actions prompted the delay . . . [Ford] cannot profit from its strategic choices."[31] Ford didn't take any action to talk with Ms. Lawhon upon learning of Henderson's intention to call her as a witness. (Doc. 107 at 73) In fact, counsel for Ford admitted he knew what she was going to say based upon the call record maintained by Ford. (*Id.* at 60) Thus, Ford was not prejudiced if she had been allowed to testify. The disclosure of Ms. Lawhon on Henderson's witness list was substantially justified or harmless.

Ms. Lawhon's testimony is extremely important and relevant to Henderson's of notice of defect. (Doc. 137 at 74) Ford's position in the case is that the slow retraction issues experienced by SN95 Mustangs only occurred when the seat belts are being stowed and not when they were being worn. (*Id.*, Doc. 107 at 54-57, 61-62, Doc. 111 at 16-20, 29-31) Ms. Lawhon's testimony and complaint to Ford provided notice that the slow retraction issue with the Mustang seat belts could take place while being worn. (Doc. 107 at 62-73, 83) Her seat belt did not retract

---

[31] *Shackelford*, No. 7:12-CV-03581-MHH, 2014 WL 5148461, at *6.

like that shown in the defense seat belt demonstration when worn. (*Id.* at 70-71) Her testimony established that she had the (1) same vehicle (2001-2004 Mustang), (2) same seat belts, (3) same retractor, (4) same issue – slow retraction, and (5) same issue when the seat belt was being worn – slow retraction/loose fit with the seat belt just like the subject vehicle. (*see Id.* at 62-86) Her testimony is important and issue substantially similar to the defect in the subject vehicle; thus, it shouldn't have been excluded for untimeliness or failure to prove substantial similarity.

### 2. Rebuttal

The district court abused its discretion when it denied Henderson the ability to call Ms. Lawhon as a rebuttal witness. Rebuttal evidence is purposed to "explain, repel, counteract or disprove the evidence of the adverse party."[32] It's not error to allow the rebuttal evidence even if that the evidence had previously been held inadmissible in the offering party's case-in-chief.[33] The fact the evidence could've been brought in the offering party's case-in-chief is of no consequence so long as the evidence is relevant and offered to rebut that of the opposing party.[34]

Henderson should've been allowed to present the testimony of Ms. Lawhon to the jury as rebuttal evidence. Her testimony and complaint rebut Mr. Burnett's

---

[32] *United States v. Frazier*, 387 F.3d 1244, 1268 (11th Cir. 2004).
[33] *United States v. Delk*, 586 F.2d 513, 519 (5th Cir. 1978).
[34] *United States v. Gardner*, 887 F.3d 780, 785 (6th Cir. 2018).

testimony, as set forth in Section IV *infra*, particularly his denial of Ford having received notice that the seat belt failed to track upon being worn by an occupant and remained loose. (Doc. 111 at 115-116) Her testimony also rebuts that of Mr. Miller, as set forth in Section III *infra*. (*Id*. at 16-19, 29-31) She experienced issues with retraction to stowage and retraction while being worn, like the defect theory testified to by Mr. Meyer. Yet, Mr. Miller testified that Mr. Meyer was wrong, despite Ms. Lawhon's testimony, which Henderson was not allowed to use in rebuttal. (*Id*. at 20, 29, Doc. 112 at 16)

Henderson filed a motion seeking leave to present the testimony of Ms. Lawhon as rebuttal evidence, to show that Ford did have notice that slow retraction was not just an issue when the seat belt was being stowed, but also when being worn, and that such a condition could and did happen. (Doc. 112 at 7-8, 13-16, Doc. 94) Her testimony was improperly excluded as rebuttal evidence. (Doc. 112 at 16) By disallowing this testimony, the jury was not given a full picture of the defect at issue, that being in the real world, the slow retraction issue also occurs when the seat belt is being worn and Ford had notice of the same.

## III.    Exclusion of Cross-Examination of Mr. Miller On Warranty Claims

The district court abused its discretion affecting Henderson's substantial rights when counsel wasn't allowed to perform a thorough cross-examination of Ford's design safety engineer, Gregory Miller, even though when cross-examining

an expert "the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility."[35] Henderson was denied this opportunity which precluded the jury from properly evaluating the weight and credibility of Mr. Miller's testimony. Not only was the Plaintiff unable to discuss the substance of the warranty claims with Ford's expert but was even further precluded from asking Mr. Miller if he reviewed the information (without going into the substance). (Doc. 111 at 4-5, 32-37) Mr. Miller was never provided the warranty claims. (*Id*. at 32-35)

Mr. Miller testified that the seat belt and its retractor performance was state of the art. (*Id*. at 16-17) Henderson should've been able to cross-examine him on the thousands of warranty claims as he opened the door to Henderson showing the enormity of the problem with the seat belts, otherwise the jury is left to believe that because the seat belt system was state of the art it worked perfectly without issue. (*Id*. at 33) He also testified that there is a difference between a belt that does not fully stow and retraction when worn. (*Id*. at 16) He discussed the tracking demonstration he performed where an occupant got in an exemplar SN95 Mustang with a seat belt hanging loose and not fully stowed, put on the belt, and when the occupant moved around the seat belt remained snug and tracked with the occupant. (*Id*. at 17-19, 30-31) He testified that he hadn't seen a demonstration by Henderson

---

[35] *Jones*, 861 F.2d at 662.

and the demonstration shows that "what Mr. Meyer is opining in this case didn't happen." (*Id*. at 20, 29)

The warranty claims, as well the document and testimony of Ms. Lawhon, directly contradict and rebut Mr. Miller's testimony that Mr. Meyer is plain wrong and what Henderson says happened in this case couldn't have happened. (*Id.* at 32-36) Henderson should've been allowed to cross-examine him on work that he did not do, that being review the warranty claims. (*Id.* at 32) Ms. Lawhon's testimony and documentation also rebuts Mr. Miller's testimony as she had both retraction to stowage issues and the belt failing to retract and remain snug when worn. (*Id.* at 33-36, Doc. 107 at 62-85) Henderson was precluded from cross-examining Mr. Miller on these issues. (Doc. 111 at 32-37, 4-5) Such testimony goes directly to the credibility of his opinions as well as to the information reviewed in formulating them and Henderson was substantially prejudiced by the preclusion of these matters from the cross-examination of him.

### IV.    Excluding Cross-Examination of Mr. Burnett On Warranty Claims

The district court abused its discretion when it precluded Henderson from asking Mr. Burnett, Ford's corporate representative and design expert, about Ford's warranty claims, customer complaints and if warranty claims led to the TSB. (Doc. 111 at 127-128) Mr. Burnett testified that slow retraction while the seat belt was being worn was never an issue that Ford was aware of and was not an

issue with this design. (*Id.* at 115-116) This testimony is completely untrue. The warranty claims, as well as Ms. Lawhon's testimony and her complaint to Ford, contradict Mr. Burnett's testimony, and specifically establish that Ford was aware slow retraction was also an issue when the belt was being worn not just when it was being stowed. (Doc. 107 at 62-85, Doc. 122-682, Doc. 122-683) Henderson was not allowed to cross-examine Mr. Burnett about warranty claims, customer complaints and the reason for the issuance of the TSB. (Doc. 111 at 127-128) The jury only heard there was no design issue with slow retraction while the belt was being worn, despite evidence existing to the contrary and known by Ford. Disallowing Henderson from rebutting Mr. Burnett's testimony and providing the jury with contradictory evidence substantially affected his rights in the presentation of his product defect claim.

## V.    Henderson is Entitled to Judgment as a Matter of Law

The district court erred when it denied Henderson's motion for judgment as a matter of law, and renewed motion, on Ford's affirmative defense of contributory negligence in the use of the driver's seat belt. (Doc. 93, Doc. 104, Doc. 111 at 131-164, Doc. 126) In reviewing such a motion, all the evidence, and the inferences drawn therefrom should be considered, "in the light most favorable to the nonmoving party."[36] It should then be determined if there is "any legally

---

[36] *McGinnis*, 817 F.3d at 1254.

sufficient basis for a reasonable jury to find in favor of the nonmoving party."[37] To overcome a Rule 50 motion, "a nonmovant must present more than a mere scintilla of evidence."[38] Ford has not produced sufficient evidence such that a reasonable jury could find in its favor on this defense. Ford must prove that:

> Chris Henderson was himself negligent in the use of the seat belt system of the 2003 Ford Mustang and his negligence was a cause of the death. Ford must prove to your reasonable satisfaction that Chris Henderson failed to do what a reasonably prudent person would have done in the use of the seat belt system in the 2003 Ford Mustang in a similar situation, or that Chris Henderson did something in the use of the seat belt system in the 2003 Ford Mustang which a reasonably prudent person would not have done in a similar situation, and that his negligence contributed to the death.[39]

Ford hasn't put forth sufficient evidence that Chris was negligent in the use of the seat belt. Ford's experts do not know how the excess webbing was introduced into the seat belt system or when the webbing became bunched in the D-ring; thus, they cannot say that Chris put the excess webbing into the belt or intentionally bunched the webbing. (Doc. 110 at 72-74, Doc. 111 at 40)

Ford has not and cannot prove proximate cause. All of Ford's experts admit that whether the excess webbing was in the seat belt system or not is of no consequences to them regarding their opinions because a properly functioning seat

---

[37] *Advanced Bodycare Solutions,* 615 F.3d at 1360.

[38] *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001).

[39] *General Motors Corp. v. Saint*, 646 So. 2d 564, 568 (Ala. 1994); APJI 32.13 – AEMLD / Defense – Contributory Negligence.

belt would not have prevented Chris's partial ejection and fatal injury in this crash. (Doc.111 at 29-30, 60, 78, 104, Doc. 110 at 35-36) Dr. Raphael testified that "the 15 inches of additional webbing did not cause his head injury." (Doc. 110 at 52) To the extent Ford could prove that Chris was negligent in the use of his seat belt, any such negligence was not the proximate cause of his death because whether there was 15 inches of excess webbing in the seat belt system or not, Ford's experts have all opined the result in this crash would still be the same, meaning Chris would still be partially ejected and receive a fatal injury; thus, contributory negligence on his part in using the subject seat belt would not be the proximate cause of his death. Ford has not offered sufficient evidence as to its affirmative defense and Henderson is therefore entitled to judgment as a matter of law.

## VI. Henderson is Entitled to a New Trial

The district court abused its discretion denying Henderson's motion for new trial. (Doc. 126) As shown in Sections I-V, *supra*, these errors weren't harmless but were highly prejudicial and the cumulative effect of these errors affected Henderson's substantial rights in this matter. Throughout trial and closing argument Ford repeatedly told the jury the way in which Henderson said the excess webbing was introduced into the belt couldn't happen because the retraction issue was only a stowage issue. (Doc. 112 at 39-61) Counsel argued, "[w]here is their evidence?" No evidence of prior problems. No testing that showed anybody ever

wearing a belt, moving around, and not following them. They didn't bring you a single test. No demonstrations. Nothing." (*Id.* at 41-42) Henderson tried to bring this evidence but was rejected at each attempt. The warranty claims as well as the testimony of Ms. Lawhon were evidence that Ford knew of the slow retraction defect and that it was a stowage issue and issue when worn. Henderson had thousands of warranty claims alerting Ford of the problem, which his expert relied upon in reaching his defect theories. Henderson didn't need a demonstration because Ms. Lawhon's first-hand experience proved that slow retraction when worn could and did happen. These errors affected his substantial rights to rebut Ford's testimony and argument and present evidence to the jury that Ford knew this defect existed. Henderson should be granted a new trial.

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's entry judgment in favor of Ford, enter judgment as a matter of law on Ford's affirmative defense of contributory negligence in the use of the seat belt, and grant Henderson a new trial.

Respectfully submitted,

/s/ Thomas P. Willingham
Thomas P. Willingham
Mary Leah Miller
**BEASLEY, ALLEN, CROW, METHVIN,**

**PORTIS & MILES, P.C.**
Overlook II
2839 Paces Ferry Road SE, Suite 400
Atlanta, GA  30339
Phone: (404) 751-1162
Facsimile: (855) 674-1818
E-mail: tom.willingham@beasleyallen.com
      maryleah.miller@beasleyallen.com

Benjamin E. Baker, Jr**.**
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103-4160
Phone: (334) 269-2343
Facsimile (334) 954-7555
Email: ben.baker@beasleyallen

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) and 32(a)(7)(B) because this brief contains 7,694 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared with a minimum font size of 14-point Times New Roman, a proportionally spaced font, using Microsoft Office Word.

/s/ Thomas P. Willingham
Thomas P. Willingham
Mary Leah Miller
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
Overlook II
2839 Paces Ferry Road SE, Suite 400
Atlanta, GA  30339
Phone: (404) 751-1162
Facsimile: (855) 674-1818
E-mail: tom.willingham@beasleyallen.com
          maryleah.miller@beasleyallen.com

Benjamin E. Baker, Jr**.**
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103-4160
Phone: (334) 269-2343
Facsimile (334) 954-7555
Email: ben.baker@beasleyallen

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of May, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which electronically served a true and exact electronic copy on the following:

Gregory L. Schuck, Esq.
Elizabeth Davis McCoy, Esq.
Huie, Fernambucq & Stewart, LLP
3291 US Highway 280, Suite 200
Birmingham, AL 35243
gschuck@huielaw.com
edavis@huielaw.com

Melody Eagan
Jeffrey P. Doss
Lightfoot, Franklin & White, LLC
400 North 20th Street
Birmingham, AL 35203
meagan@lightfootlaw.com
jdoss@lightfootlaw.com

*Attorneys for Ford Motor Company*

/s/Thomas P. Willingham
Thomas P. Willingham