[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-10348

_____

MARK HENDERSON,
as Administrator of the Estate of Christopher Henderson,
deceased,

                                  Plaintiff-Appellant-Cross Appellee,

*versus*

FORD MOTOR COMPANY,
a corporation,

                                  Defendant-Appellee-Cross Appellant.

_____

Appeals from the United States District Court
for the Northern District of Alabama

D.C. Docket No. 5:18-cv-00368-LCB

_____

Before WILSON, JILL PRYOR, Circuit Judges, and CONWAY,* District Judge.

WILSON, Circuit Judge:

Chris Henderson, through his estate, sued Ford Motor Company, *inter alia*, for wrongful death and products liability pursuant to the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). He alleged that a faulty seatbelt design in his 2003 Ford Mustang caused his fatal injury. At trial, the jury returned a verdict in favor of Ford. Henderson now appeals, arguing that the district court erroneously ruled on several evidentiary issues, a motion for judgment as a matter of law (JMOL), and a motion for a new trial.

Ford filed a cross-appeal in anticipation of a possible reversal, challenging the district court's denial of its motion to exclude expert testimony at trial.

For the reasons set forth below, we **AFFIRM** the rulings challenged by Henderson. As for Ford's cross-appeal, we **DISMISS** for lack of standing.

## I.

In 2016, Henderson lost control of his 2003 Ford Mustang while driving. The car rolled and, because his seatbelt had at least

---

* Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

fifteen inches of slack—"excess webbing"—between his right hip and left shoulder, his body partially ejected from the car, resulting in a fatal head injury. According to Henderson's theory of the case, the excess webbing was the result of a defective seatbelt system.

At trial, Ford introduced the actual seatbelt and retractor from Henderson's car into evidence. The retractor worked properly, exhibiting no slow retraction, and the jury was able to examine it. Ford also introduced a seatbelt expert who testified that because the seatbelt retractor appeared to be working, there were only two scenarios to explain the excess webbing at the time of the crash: 1) Henderson was driving with full awareness of the excess webbing, or 2) Henderson improperly leaned forward in his seat with at least one pound of force, causing the excess webbing. This evidence was intended to show contributory negligence on the part of Henderson. Ford also introduced expert testimony from a biomechanics expert and a seatbelt expert who testified that even if the seatbelt did not have excess webbing, Henderson's head still would have protruded through the window given the intensity of the accident.

Henderson introduced seatbelt and design expert Steve Meyer, who testified that the extra webbing was due to the inability or failure of the seatbelt retractor to properly retract the webbing. He also offered alternative designs that Ford could have used to prevent the problem. Ford moved to exclude Meyer's expert testimony, arguing Meyer's methodology was deficient and his opinions amounted to impermissible *ipse dixit*. The district court

denied this motion, and the expert testimony was admitted. Henderson also introduced evidence to show that Ford had issued Technical Service Bulletins to address seatbelt retraction issues in 2000–2004 Mustangs. The solution in the bulletin was to add Teflon tape to the seatbelt. One month after Henderson's Mustang was manufactured, Ford began manufacturing Mustangs with the Teflon Tape.

Henderson tried to introduce 50,829 warranty claims that purportedly showed thousands of reports filed with Ford regarding seatbelt issues in 2001–2004 Mustangs. The district court suppressed the warranty claims because they were not "substantially similar" to the claims at trial. Henderson alternatively tried to introduce these warranty claims during cross-examination to rebut Ford's experts, but the court prevented the warranty evidence from coming in.

Henderson also tried to offer testimony from Kathy Lawhon, who previously owned a Ford Mustang with seatbelt issues. The district court heard her testimony and ultimately excluded it because Henderson did not identify Lawhon as a potential witness until midnight on the day final trial witness lists were due and nine months after the close of discovery. The court would not alternatively allow Lawhon as a rebuttal witness because her experience with her Mustang was not "substantially similar" to the issues at trial.

Henderson now appeals. First, he argues that the district court abused its discretion by excluding the warranty claims as

other incident evidence, by precluding the introduction of the warranties on cross-examination, by excluding Lawhorn's testimony, and by excluding Lawhon as a rebuttal witness. Second, he argues that he is entitled to JMOL, and third, he argues that the district court erred by denying his motion for a new trial. Ford cross-appeals the admission of Henderson's expert. Each issue will be addressed in turn.

## II.

First, we turn to Henderson's claim that the district court abused its discretion when it excluded 1) testimony from Kathy Lawhon, who claimed she had similar seatbelt issues with her Ford Mustang, and 2) 50,829 warranty claims that purportedly showed thousands of issues with seatbelts in 2001–2004 Mustangs.

We afford deference to the district court's evidentiary decisions, and "[w]e will only reverse a district court[] . . . where the appellant can show that the judge abused his broad discretion and that the decision affected the substantial rights of the complaining party." *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1395 (11th Cir. 1997) (internal quotation marks omitted). "[T]he abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment" or is based on the wrong legal standard. *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1104 (11th Cir. 2005) (internal quotation marks omitted).

When a party seeks to admit prior accidents or occurrences involving the opposing party to show, for example, "notice,

magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, [or] causation," the substantial similarity doctrine applies. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir. 1988). The doctrine "does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1288, 1287 (11th Cir. 2015). That said, a prior incident sought to be introduced as evidence "must not have occurred too remote in time," *Jones*, 861 F.2d at 662, and must be similar enough to the present incident "to allow the jury to draw a reasonable inference" regarding the defendant's knowledge or ability to foresee the incident at issue, *Sorrels*, 796 F.3d at 1299 (quoting *Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 755 (11th Cir. 1985)).

Where evidence of a prior incident is found inadmissible, it may otherwise be used by an expert at trial as the basis to form her opinion if the "probative value in helping the jury evaluate the opinion substantially outweighs [the evidence's] prejudicial effect." Fed. R. Evid. 703. This court has maintained that "Rule 703, however, is not an open door to all inadmissible evidence disguised as expert opinion." *United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir. 1987).

We have also recognized that district courts have "'unquestionable' authority to control their own dockets." *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014). When parties fail

22-10348               Opinion of the Court                              7

to provide information or identify a witness as required by Federal Rule of Civil Procedure 26(a) or (e), the district judge may exclude that witness unless the party's failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). When deciding if the late disclosure of a witness was justified, courts consider: "(1) the importance of the testimony; (2) the reason for the appellant's failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify." *Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004). The district court has considerable discretion in determining whether exclusion is proper. *Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 234–35 (5th Cir. 1981).[1]

Here, the court acted within its wide discretion to exclude an untimely disclosed witness. The court heard Lawhon's testimony and thereafter, in its discretion, appropriately weighed the importance of the testimony, the explanation for the delay, and the prejudice to the opposing party as the law directs. *See Bearint*, 389 F.3d at 1353. The district court concluded that the testimony was not substantially similar enough to Henderson's defect theory to warrant admission.

The court also acted well within its discretion when it excluded the warranty claims. The district court again appropriately applied the substantial similarity doctrine and, in its discretion,

---

[1] Decisions of the former Fifth Circuit issued before October 1, 1981, are binding on this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

concluded the warranties were not sufficiently similar to the issue at trial. The district court then appropriately permitted the experts to review the inadmissible warranty evidence under Federal Rule of Evidence 703, but prevented the cross-examination from opening the door to "inadmissible evidence disguised as expert opinion." *Scrima*, 819 F.2d at 1002.

Since Henderson has not identified any misapplication of law or clear error of judgment, *Cook*, 402 F.3d at 1104, we **AFFIRM** these evidentiary rulings.

### III.

Turning to the JMOL claim, Henderson alleges that he is entitled to JMOL on Ford's affirmative defense of contributory negligence. We review the district court's denial of a party's motion for JMOL de novo, "considering only the evidence that may properly be considered and the reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Rossbach v. City of Miami*, 371 F.3d 1354, 1356 (11th Cir.2004) (per curiam). "Where 'no legally sufficient evidentiary basis exists for a reasonable jury to find for that party on that issue,' judgment as a matter of law is proper." *Id.* (quoting 12 Moore's Federal Practice § 56.50[5] (3d ed. 1998)). "But if there is substantial conflict in the evidence, such that 'reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied.'" *Christopher v. Florida.*, 449 F.3d 1360, 1364 (11th Cir. 2006) (quoting *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995)).

Here, the working seatbelt from the crash was admitted into evidence alongside expert testimony opining that the driver likely caused the excess webbing. A reasonable jury could have weighed this evidence against the evidence introduced by Henderson and "might reach different conclusions" about whether Henderson was contributorily negligent. *Id.* Therefore, JMOL is not proper, and we **AFFIRM** the district court's denial of Henderson's motion.

## IV.

Turning to Henderson's claim that the district court erred when it denied his motion for a new trial. The decision to grant or deny a new trial is reviewed under an abuse of discretion standard. *Fondren v. Allstate Ins. Co.*, 790 F.2d 1533, 1534 (11th Cir. 1986). Trial courts should grant new trials on an evidentiary basis "only when the jury verdict is against the great—not merely the greater—weight of the evidence." *Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1514–15 (11th Cir. 1993) (internal quotation marks omitted). This difficult standard is "intended to preserve litigants' right to a jury trial and to ensure that judges will not substitute their own judgment for that of the jury with respect to disputed issues of fact." *Id.* at 1515. A party is owed a new trial where evidentiary issues affected the party's "substantial rights." *See Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1465 (11th Cir. 1994); Fed. R. Civ. P. 61.

Since we do not find any evidentiary issues that occurred at trial, a new trial is not appropriate. Accordingly, we **AFFIRM** the district court's denial of Henderson's motion for a new trial.

## V.

Finally, Ford's cross-appeal. It is a jurisdictional requirement that litigants "establish their standing not only to bring claims, but also to appeal judgments." *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003). "Only a litigant who is aggrieved by the judgment or order may appeal." *Id.* at 1354 (internal quotation marks omitted). A cross-appeal by a prevailing party is neither necessary nor appropriate where the prevailing party is merely seeking to expand the preclusive effect of the current judgment upon some future litigation. *See Yunker v. Allianceone Receivables Mgmt., Inc.*, 701 F.3d 369, 374 (11th Cir. 2012) (per curiam) ("[E]ven if our decision on the merits could assist [the parties] in some future litigation, such a decision would be exactly the sort of advisory opinion prohibited by Article III."); *see also Elec. Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939).

An appellee may not "attack [a] decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924). "Ordinarily, the prevailing party does not have standing to appeal because it is assumed that the judgment has caused that party no injury." *Agripost, Inc. v. Miami-Dade Cnty.*, 195 F.3d 1225, 1230 (11th Cir. 1999). We have recognized that "[a]n exception to this rule exists, however, when the prevailing party is prejudiced by the collateral estoppel effect of the district court's order. In such a case, the litigant has been aggrieved by the judgment and has standing to appeal." *Id.* However, a prevailing party cannot cross-appeal from an order that would not have a collateral estoppel

effect, or from dicta that is unnecessary to support the ruling. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 334–335 (1980); *Elec. Fittings Corp.*, 307 U.S. at 242 ("A party may not appeal from a judgment or decree in his favor, for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree.").

Although Ford has identified cases where we have addressed a victorious plaintiff's cross-appeal, this court is not bound by a prior decision's *sub silentio* treatment of a jurisdictional question. *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1168 (11th Cir. 2007). We write today to clarify our precedent: prevailing parties lack standing to appeal absent some prejudice by the collateral estoppel effect of the district court's order.

Since Ford is the prevailing party, its injury is merely anticipatory. Accordingly, we **DISMISS** the cross-appeal in its entirety.

**AFFIRMED and CROSS-APPEAL DISMISSED.**